UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM CALDWELL,

        Plaintiff,

v.                                                                                          Case No. 1:05-cv-745
                                                                      HON. ROBERT HOLMES BELL

S. OCKERT, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff William Caldwell, a former prisoner confined at the Bellamy Creek Correctional Facility in Ionia, Michigan, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The court dismissed defendants Avery and Bashore on November 30, 2005, and on January 26, 2006, the court granted plaintiff's motion to voluntarily dismiss defendant Angel. Defendants Corrections Officers Stacey Ockert and Andreas Petersen remain in this case. Plaintiff's remaining claims are for alleged acts of retaliation.

On the morning of June 3, 2004, plaintiff alleges that defendant Ockert conducted a prisoner count in a threatening manner.[1] Defendant Ockert "viciously" kicked plaintiff's cell door, entered his cell and yelled at plaintiff to show himself during the count, and then slammed his cell door shut. On his way to lunch, plaintiff confronted defendant Ockert regarding his conduct. Defendant Ockert stated "file a grievance." Plaintiff replied "that is what I will have to do." When

---

[1]Plaintiff filed a motion to strike defendants' reference to June 4, 2004, as the date this occurred. Plaintiff asserted in his motion to strike that the date should be June 3, 2006. However, all parties are wrong about this date. The correct date is June 3, 2004. Moreover, the exact date that this act occurred is not particularly relevant.

plaintiff returned from lunch, he found that prison staff confiscated his TV, "earbuds," and a magazine, as well as ransacked his personal possessions. None of plaintiff's cellmate's possessions were disturbed. On June 4, plaintiff filed a grievance against defendant Ockert because of his conduct during the prisoner count.

For his confiscated personal items, plaintiff received a Michigan Department of Corrections (MDOC) Contraband Removal Record on June 4, which listed defendant Petersen as the staff member who removed plaintiff's TV, "earbuds," and magazine from his cell. Plaintiff then confronted defendant Petersen regarding the MDOC Contraband Removal Record. Defendant Petersen responded "[y]ou're getting your T.V. back. Your property was taken to show you what we can do when you threaten us with a grievance." Plaintiff filed a grievance against defendant Petersen and appealed it to Step III.

On the morning of June 12, 2004, plaintiff alleges that defendant Ockert threatened to place him on his "personal wait program." Under his "personal wait program," defendant Ockert significantly delays or refuses to open a prisoner's cell door for meals, work details and emergencies. Later that day, prison staff refused to open plaintiff's cell door for a prolonged period of time before lunch, allegedly because plaintiff's cell mate was on the "personal wait program." Plaintiff did not miss lunch. Plaintiff filed a grievance against defendant Ockert and appealed it to Step III.

Defendants move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of

material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff cannot support his claims of retaliation and they should be dismissed from this action. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S.

274, 287 (1977)).  In the context of a First Amendment retaliation claim a prisoner is expected to endure more than the average citizen.  *Thaddeus-X* at 398.

Defendants concede for purposes of this motion that plaintiff engaged in protected conduct.  Defendants argue that no adverse action can be shown.  Plaintiff alleges that his cell was searched and his television and Playboy magazine were confiscated by defendant Petersen after plaintiff threatened to file a grievance against defendant Ockert.  Plaintiff's television was returned the same day it was confiscated.  Plaintiff further alleges that defendant Ockert delayed the opening of plaintiff's cell door, causing plaintiff to nearly be late for lunch.  Defendants deny the allegations in plaintiff complaint.  Defendant Petersen asserts that he was not aware of the threatened grievance against defendant Ockert, and that he searched plaintiff's cell during the lunch hour as part of his routine.  Plaintiff's television set was taken because it was altered and returned after the alterations were removed.  Similarly, plaintiff's Playboy magazine was taken because it was altered.

Accepting plaintiff's assertions as true, plaintiff cannot show adverse conduct.  The confiscation of altered property including a television set that was returned the very same day and a short delay in being allowed to go to lunch does not rise to the level of adverse conduct necessary to support a retaliation claim.  No ordinary prisoner would be deterred from filing grievances or lawsuits as a result of this conduct.  Similarly, plaintiff has failed to show any connection between his threatened grievance filing against defendant Ockert and defendant Petersen's search of his cell.  Nor has plaintiff established any connection to the alleged delay in the opening of his cell door by prison staff and the filing of grievances.  In the opinion of the undersigned, plaintiff's retaliation claims should be dismissed.

Defendants have also moved for qualified immunity.  Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar

as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there

is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and

- 6 -

a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429.  If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429.  These are both purely legal questions.  The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights.  *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991).  In the opinion of the undersigned, plaintiff cannot establish that defendants took retaliatory action.  Defendants should be entitled to the defense of qualified immunity.

Plaintiff also moves to amend his claim to reassert a retaliation claim against dismissed defendant D. Angel.  Plaintiff now asserts that D. Angel is his John Doe defendant. Plaintiff alleges that he was retaliated against by D. Angel on April 26, 2005, when he was searched by D. Angel.  D. Angel confiscated fourteen family photographs and five laminated bookmarkers. Plaintiff received an allegedly incomplete contraband removal slip.  Plaintiff alleges that D. Angel told him that he retaliated against plaintiff for the filing of grievances against kitchen staff.

Leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). However, "a party must act with due diligence if it intends to take advantage of the Rule's liberality." *United States v. Midwest Suspension and Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995). The court may deny leave to amend a complaint where the amendment is brought in bad faith, will result in undue delay or prejudice to the opposing party, or is futile. *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995), *cert. denied*, 116 S. Ct. 1354 (1996).

In the opinion of the undersigned, plaintiff's motion for leave to amend his complaint should be denied because his claim against defendant D. Angel is futile. Plaintiff cannot establish that the search and confiscation of his property constitutes adverse conduct necessary to support a retaliation claim. As a prisoner, plaintiff was subject to search at all times. Searching prisoners and the removal of contraband property is routine. Plaintiff cannot show that the ordinary prisoner would be deterred from filing grievances as a result of being searched and having property confiscated. Therefore, in the opinion of the undersigned, plaintiff's motion for leave to amend his complaint should be denied.

In summary, in the opinion of the undersigned, plaintiff has failed to sustain his burden of proof in response to defendants' motion for summary judgment. Accordingly, it is recommended that defendant's motion for summary judgment (Docket #16) be granted and that this case be dismissed in its entirety. It is further recommended that plaintiff's motion to strike (Docket # 29) and plaintiff's motion for leave to file a second amended complaint (Docket #21) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an

appeal.  It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

        NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b).  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
        TIMOTHY P. GREELEY
        UNITED STATES MAGISTRATE JUDGE

Dated:   October 27, 2006